

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-3-2007

# Go v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5433

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Go v. Atty Gen USA" (2007). *2007 Decisions.* Paper 1366.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1366

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-5433
_____

HOK SENG GO,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board No. A96 262 769)
Immigration Judge:  Miriam K. Mills
_____

Submitted Under Third Circuit LAR 34.1(a)
March 26, 2007

Before:  FISHER, JORDAN and ROTH, *Circuit Judges*.

(Filed:  April 3, 2007)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Hok Seng Go seeks review of a Board of Immigration Appeals' ("BIA") final

order affirming the Immigration Judge's ("IJ") decision to deny Go's requests for

withholding of removal and protection under Article III of the Convention Against

Torture ("CAT"). Because we find that the BIA's decision was supported by substantial evidence, we will deny the petition for review.

I.

As we write only for the parties, we will forgo a lengthy recitation of the factual and legal background to this case. Go is an ethnic Chinese and practicing Catholic who is a native and citizen of Indonesia. On March 18, 1999, he entered the United States on a nonimmigrant tourist visa, which authorized him to remain in the country until September 17, 1999. On March 24, 2003, the Immigration and Nationalization Service ("INS")[1] charged Go with removability under § 237(a)(1)(B) of the Immigration and Nationality Act ("INA"). He requested withholding of removal under INA § 241(b)(3) and CAT protection.[2]

During a hearing before the IJ, Go was the only witness to testify. His claim rested on one incident that occurred on July 20, 1997. When he and his fiancée were traveling to church that day, their car was surrounded at a stoplight by a group of five young Muslim men who yelled at them and beat on the car windows. Go testified that he could see that they were armed with knives, pipes, and other small weapons. They demanded

---

[1]The INS ceased to exist in 2003. Pursuant to the Homeland Security Act of 2002, the enforcement functions of the INS were transferred to the Department of Homeland Security, Bureau of Immigration and Customs Enforcement. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, § 441, 116 Stat. 2135, 2192.

[2]Go withdrew his application for asylum because it was filed well after the one-year deadline.

that the Petitioner give them money.  When Go gave them a small amount of money, they were angered and began banging on the windows and demanding more.  Go opened the window to give them more money, and one of the men attempted to punch him.  Go raised his hand to protect his face, and his hand was sliced by a knife that the assailant was wielding.  Finally, the light turned green, and the Petitioner was able to drive away.  He went right to a police station to report the incident, but he was told that there was nothing the police could do because he did not have any information about the identity of the attackers.  After the robbery, Go's fiancée was distraught, and both of them feared for their safety.

Based on this testimony, the IJ denied Go's applications for withholding of removal and CAT protection.  She observed that Go was the victim of a single criminal act, that there was no evidence his family, who remained in Indonesia, suffered any harm, or that there was a pattern or practice of ethnic Chinese being targeted for persecution to a significant degree.  On November 16, 2005, the BIA affirmed the IJ's decision without opinion.  This petition followed.

## II.

We exercise jurisdiction to review the BIA's final order of removal under 8 U.S.C. § 1252(a)(1).  Where, as here, the BIA has adopted the findings and reasoning of the IJ, we review the IJ's decision.  *Sukwanputra v. Gonzales*, 434 F.3d 627, 631 (3d Cir. 2006).  In our review, we apply the substantial evidence standard, under which an IJ's decision must be affirmed if it is "supported by reasonable, substantial, and probative

3

evidence on the record considered as a whole." *Balasubramanrim v. INS*, 143 F.3d 157, 161 (3d Cir. 1998) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)) (internal quotation marks omitted). In other words, "the [IJ's] finding must be upheld unless the evidence not only supports a contrary conclusion, but compels it." *Abdille v. Ashcroft*, 242 F.3d 477, 483-84 (3d Cir. 2001).

We are unable to conclude that the evidence in this case compels a result contrary to the one reached by the IJ. Withholding of removal is proper when an alien can establish a "clear probability" that his life or freedom would be threatened in the proposed country of removal "because of the alien's race, religion, nationality, membership in a particular social group or political opinion." *INS v. Stevic*, 467 U.S. 407, 429 (1984); 8 U.S.C. § 1231(b)(3)(A). Specifically, an alien must prove that it is more likely than not that he would be persecuted if returned to his home country. *See Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993). Here, the only evidence in the record relating to Go individually is one criminal incident in 1997, and there is no evidence to suggest that this was motivated by anything other than a desire to rob Go. The only reason that the police could not help him after the robbery is that he was unable to provide any identifying information about the attackers. On this record, we cannot say that it is more likely than not that Go would be persecuted if he returned to Indonesia.

There is also substantial evidence to support the IJ's determination that there is no pattern or practice of persecution regarding ethnic Chinese or practicing Christians in Indonesia. As we have explained, "to constitute a 'pattern or practice,' the persecution of

4

the group must be 'systemic, pervasive, or organized.'" *Lie v. Ashcroft*, 396 F.3d 530, 537 (3d Cir. 2005) (quoting *Ngure v. Ashcroft*, 367 F.3d 975, 991 (8th Cir. 2004)). Although the Petitioner focuses on the events during the anti-Chinese riots that occurred in Indonesia in 1998, the evidence in the record suggests that conditions have improved since that time. The State Department's 2003 International Religious Freedom Report and the 2003 Country Report on Human Rights Practices in Indonesia, both part of the record, support this point. Indeed, the record indicates that a vast majority of the more recent attacks against Christians occurred in the areas of Moluccas, Sulawesi, Ambon, and Aceh, undermining any suggestion that such attacks are pervasive. Finally, the IJ's decision is supported by the fact that Go's family continues to live in Indonesia without incident. *See id.* ("[W]hen family members remain in petitioner's native country without meeting harm, and there is no individualized showing that petitioner would be singled out for persecution, the reasonableness of a petitioner's well-founded fear of future persecution is diminished."). As such, there is no evidence in the record that compels us to conclude that there is a "clear probability" Go's life or freedom would be threatened if he returned to Indonesia.

Likewise, we conclude that the IJ's finding that Go is not entitled to CAT protection is supported by substantial evidence. Such protection is appropriate when an alien can prove "that it is more likely than not that he will be tortured if he is removed to" his home country. *Gabuniya v. Att'y Gen.*, 463 F.3d 316, 321 (3d Cir. 2006) (citing 8 C.F.R. § 208.16(c)(2)). The record in this case is simply devoid of any evidence

5

suggesting that Go might be tortured if he returned to Indonesia.  Consequently, we are not compelled to reach a conclusion on this claim contrary to the one reached by the IJ.

III.

For the foregoing reasons, we will deny Go's petition for review.